UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MISTY D. SHOCKEY,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:25-cv-00070-KES-CDB (SS)

ORDER VACATING SEPTEMBER 29, 2026, FINDINGS AND RECOMMENDATIONS

(Doc. 18)

FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRM DECISION OF COMMISSIONER OF SOCIAL SECURITY

(Docs. 11, 15)

**14-Day Objection Period**

Plaintiff Misty D. Shockey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 10, "AR") and the parties' briefs (Docs. 11, 15, 16), which were submitted without oral argument.

## I. ORDER VACATING SEPTEMBER 29, 2026, FINDINGS AND RECOMMENDATIONS

On September 29, 2026, the undersigned issued findings and recommendations to grant in part Plaintiff's motion for summary judgment. (Doc. 18). The parties were ordered to file any

objections thereto within 14 days of service of the findings and recommendations. *Id.* at 29-30.

On October 13, 2026, Defendant Commissioner timely filed objections, objecting to the undersigned's findings that the ALJ erred in assessing Plaintiff's residual functioning capacity (RFC) (Doc. 18 at 24-27) and that the ALJ erred in finding that Plaintiff could perform competitive work (*id.* at 27-29). (Doc. 19 at 2). Specifically, Commissioner contends that the undersigned appears to have erred in finding that the ALJ found fibromyalgia to be a non-severe impairment when, in fact, the ALJ stated that fibromyalgia was not a medically determinable impairment (MDI). *Id.* Commissioner argues the undersigned therefore erred in relying on this misinterpretation in finding that the ALJ failed to address whether and to what extent limitations associated with Plaintiff's fibromyalgia were considered in assessing the RFC and that Plaintiff could perform competitive work. *Id.* at 3.

Plaintiff filed a reply to Commissioner's objections in which she asserts substantially the same arguments she raised in her previous briefing on the motion for summary judgment, to wit, that the ALJ did not properly consider the requirements to find that Plaintiff's fibromyalgia is a MDI. (Doc. 20 at 1) ("Defendant's objection … fails because it does not properly consider the requirements for fibromyalgia as a [MDI]."); *see* (Doc. 11 at 13) ("Fibromyalgia was not considered based on the ALJ's conclusion that there is no evidence that other disorders were excluded as causing the signs or symptoms."); (Doc. 16 at 2 ["Plaintiff's treatment records … support fibromyalgia … as [a] severe condition"], 8 ["Defendant does not dispute that Plaintiff meets the other criteria for fibromyalgia."]).

The undersigned concludes that Defendant Commissioner's objections are meritorious. As explained further below (*infra* Section IV.B), the ALJ was correct in finding that Plaintiff's alleged fibromyalgia is not an MDI because the record evidence does not demonstrate that Plaintiff's other conditions that could cause Plaintiff's symptoms were excluded in making that diagnosis. *See* (AR 23) ("The claimant's alleged fibromyalgia … is not a [MDI] because [SSR] 12-2p requires evidence that other disorders that could cause the symptoms or signs were excluded."). The undersigned misinterpreted that Plaintiff's fibromyalgia was deemed a non-severe impairment when, in fact, it was determined to be not an MDI, whether non-severe or severe or otherwise. Accordingly, the

undersigned issues the following replacement findings and recommendations. Specifically, the undersigned updates its findings and recommendations in Sections IV.D and IV.E below.

## II. BACKGROUND

### A. Administrative Proceedings and ALJ's Decision

On September 22, 2021, Plaintiff filed applications pursuant to Title II and Title XVI for disability and disability insurance benefits and supplemental security income, with an alleged disability onset date of April 21, 2019. (AR 18). Plaintiff's claim was initially denied on June 13, 2022, and again upon reconsideration on March 21, 2023. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on May 1, 2023. *Id.* Marc Yerkey, the Administrative Law Judge ("ALJ"), held a telephone hearing on April 15, 2024, during which Plaintiff, with representation by her attorney, Olivia Sanders, and impartial vocational expert Gregory S. Jones ("VE") testified. *Id.* The ALJ issued an unfavorable decision on May 22, 2024, finding Plaintiff was not disabled. (AR 15, 21-29). The Appeals Council denied Plaintiff's request for review on November 14, 2024, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a) and 416.920(a). (AR 21-29). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2019, the alleged onset date. (AR 21).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: degenerative disc disease of the lumbar spine; seropositive rheumatoid arthritis; hepatitis C; and Sjogren's syndrome. *Id.* The ALJ considered the severity of Plaintiff's mental impairments of depressive and anxiety disorders, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[1] Because Plaintiff's mental impairments did not cause at least two "marked"

[1] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 21-22).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [A]ny work involving more than frequent pushing/pulling of the bilateral lower extremities; any climbing ladders, ropes, or scaffolds; more than occasional of the remaining postural activities (with no limits in balancing); more than frequent handling and fingering with the bilateral upper extremities; and any concentrated exposure to extreme cold or hazards.

(AR 24).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. §§ 404.1529 and 416.929, and SSR 16-3p. *Id.* The ALJ summarized Plaintiff's hearing testimony:

> [Plaintiff] believed she cannot work because she cannot sit or stand for longer than 30 minutes. She has to relax by lying down in a recliner and it takes her several hours to go back to sitting or standing because she has to lie down. She spends most of the day sitting in a recliner. Her son does almost all of the cooking and cleaning and other household tasks as well as the grocery shopping. She has difficulty bathing and has difficulty shampooing her hair due to arthritis in her hands. She stated she could lift no more than a gallon of milk. She goes to see a doctor for her arthritis once a month as well as a neurologist once a month. She sees her psychiatrist once a month and a therapist weekly. She left her last job test driving because she was unable to sit in the vehicle for very long. She stated that her average pain level after taking her medications was 5-6. Her knees are very painful and swell all the time. She has bad days five or six times a week in which her legs are swollen and her back is very painful. She has had epidural injections on her back but not for the past two or three years. She has not used heroin, meth or

---

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a plaintiff has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.*

marijuana since 2019.

(AR 25).

The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment history and notes, activities of daily living ("ADLs"), and prior administrative medical findings and treating sources, determined that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of symptoms are inconsistent with the record. (AR 25-27).

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as an informal waitress, which he found does not require the performance of work-related activities precluded by the RFC. (AR 27) (citing 20 C.F.R. §§ 404.1565, 416.965). The ALJ found that Plaintiff was a younger individual age 18-49 on the alleged disability date, and subsequently, on August 7, 2022, Plaintiff changed age category closely to approaching advanced age. (AR 28) (citing 20 C.F.R. §§ 404.1563, 416.963). The ALJ further found that Plaintiff has at least a high school education and that transferability of job skills is not material to the determination of disability. *Id.* (citing SSR 82-41, 20 C.F.R. §§ 404.1564, 416.964).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform considering Plaintiff's age, education, work experience, and RFC. (AR 28-29). The ALJ cited general cashier, housekeeping cleaner, and cafeteria attendant based on the testimony of the vocational expert, noting that although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"), there is a reasonable explanation for the discrepancy (*e.g.*, "less pushing and pulling and not specifying type of climbing."). (AR 29). The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from April 21, 2019, the alleged disability onset date, through the date of the decision. *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

**B. Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## III. LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the

claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## IV. ISSUES AND ANALYSIS[2]

In her opening brief, Plaintiff identifies three issues for review denominated as "Issue 1," "Issue 2," and "Issue 3." Based on her arguments presented, the undersigned concludes that Plaintiff properly raises the following five issues:

1. Whether the ALJ erred in finding Plaintiff's mental impairments non-severe;
2. Whether the ALJ improperly found Plaintiff's fibromyalgia was not a MDI;
3. Whether the ALJ failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations;
4. Whether the ALJ erred in assessing Plaintiff's RFC; and
5. Whether the ALJ's finding that Plaintiff could work in a competitive work environment was erroneous given the ALJ's hypothetical questions to a vocational expert were incomplete.

*See* (Doc. 11 at 8). As set forth in more detail herein, summary judgment is not warranted in

[2] Filings are referenced herein according to the associated CM/ECF-designated pagination.

Plaintiff's favor because the undersigned finds that she has not shown any error warranting remand.

In her reply brief, Plaintiff newly raises the argument that the ALJ improperly discounted her subjective symptom testimony. (Doc. 16 at 7-8). This appears to be responsive to the Commissioner's arguments raised in opposition that the ALJ did not unreasonably discount Plaintiff's symptomology testimony. *See* (Doc. 15 at 2-6). However, Plaintiff neither asserted in her opening brief that the ALJ erred in his treatment of Plaintiff's testimony nor presented any developed argument concerning any such error. Instead, Plaintiff made a passing reference to a single statement of law by the Ninth Circuit that governs an ALJ's treatment of symptomology testimony. *See* (Doc. 11 at 25) (citing *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024)).

The only assignment of error Plaintiff presented in her opening brief relating to the ALJ's treatment of her hearing testimony is that the hypothetical the ALJ presented to the vocational expert did not include restrictions responsive to her testimony. This assignment of error properly is before the Court and is addressed below. However, Plaintiff's new argument presented on reply – that the ALJ was not permitted to discount her hearing testimony without "offering specific, clear and convincing reasons for doing so" (Doc. 16 at 4, quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) – was not presented in Plaintiff's opening brief. *Cf id.* at 5 (arguing that the clear and convincing standard "is the most demanding required in Social Security cases") (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Accordingly, because Plaintiff did not properly present in her opening brief the issue of whether the ALJ identified clear and convincing reasons to reject her subjective symptom testimony, the undersigned finds any such issue waived and declines to address it. *See, e.g., Kristen Noel R. v. Kijakazi*, No. 20-cv-04134-SK, 2021 WL 5449050, at *6 (N.D. Cal. Nov. 22, 2021) (finding plaintiff's argument regarding the ALJ's discounting of her subjective symptom testimony was waived and could not be considered because it was raised for the first time in a reply brief) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)); *Lee v. Colvin*, No. 2:14-cv-1560-AC, 2015 WL 5544508, at *8 (E.D. Cal. Sept. 18, 2015) ("[P]laintiff does not raise [the ALJ's interpretation of her testimony] as an issue, and the court therefore will not consider it.") (citing *Greger v. Barnhart*, 464 F.3d 968, 973-74 (9th Cir. 2006)) ("It was the ALJ who first raised whether Greger had a rating from the VA

for PTSD … Nonetheless, Greger, who was represented by counsel at all times, failed to claim PTSD as a basis for his disability. Therefore, the issue is waived.”).

**A. Whether the ALJ Erred in Finding Plaintiff's Mental Impairments Non-Severe**

1. Parties' Contentions

Plaintiff contends the ALJ failed to properly assess her mental impairments of depressive and anxiety disorders at step two in finding that the mental impairments considered singly and in combination with Plaintiff's severe MDIs do not cause more than minimal limitation in her ability to perform basic mental work activities and that the mental impairments are non-severe. (Doc. 11 at 11). Plaintiff asserts the ALJ failed to consider whether the combination of several of Plaintiff's impairments produce a severe impairment and impact her ability to function. *Id.* at 12. Plaintiff argues that her treatment history substantiates her testimony that she has regular appointments with a psychiatrist and a therapist, and cites to various treatment records demonstrating that she has severe depression and anxiety and has been prescribed for methadone, Seroquel, and Trazodone. *Id.*

Defendant contends the ALJ appropriately found Plaintiff's mental impairments of depression and anxiety non-severe under the Paragraph B criteria as the impairments did not cause more than mild limitations in any of the four areas of functioning. (Doc. 15 at 7).

2. Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and

remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (citing SSR 85-28). Moreover, once the ALJ finds the plaintiff has at least one severe impairment at Step Two, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Thus, if step two is resolved in the plaintiff's favor, any error is harmless so long at the ALJ considered limitations from all of the plaintiff's impairments when formulating the RFC. *See Peebles v. Saul*, 827 F. App'x 727, 729 (9th Cir. 2020) (citing *Buck*, 869 F. 3d at 1048-49).

In rating a mental impairment, the ALJ considers the degree of limitation in each of the four paragraph B functional areas according to the following "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ rates the plaintiff's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the plaintiff's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Legal error occurs when an ALJ neglects to document application of the paragraph B criteria or fails to include a specific finding as to the degree of limitation in any of the four functional areas. *See Keyser*, 648 F.3d at 725-26; e*.g., Lee v. Kijakazi*, No. 3:20-cv-01596-H-BGS, 2022 WL 913057, at *4-5 (S.D. Cal. Mar. 29, 2022) (upholding ALJ's determination that the plaintiff's anxiety and depression were non-severe MDIs).

Substantial evidence supports an ALJ's finding that a plaintiff's mental impairments are non-severe if (1) he properly considered the plaintiff's mental health records, (2) he properly considered the Paragraph B criteria, and (3) the record supports his findings regarding the non-severity. *See Woods*, 32 F.4th at 794.

3. Analysis

At step two, the ALJ found that Plaintiff's mental MDIs of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore "non-severe." (AR 21). The ALJ considered each of the four functioning areas of the paragraph B criteria by referencing the April 2022 consultative mental evaluation by Dr. Kim Chronister and other treatment records. (AR 21-22) (citing Exs. 4E, 12F, 20F).

The ALJ found that Plaintiff had only a mild limitation in understanding, remembering, or applying information by referencing Dr. Chronister's finding that Plaintiff had no memory deficits, was fully alert and oriented, had a "normal fund" of knowledge, average estimated intelligence, normal abstract thinking, and "was able to do calculations when prompted[.]" (AR 22) (citing Ex. 12F); *see* (AR 1644 [April 26, 2022, mental status examination showing Plaintiff was oriented, was "able to complete digit span forward and backward 1-10" and "was able to recall 1/3 objects in five minutes, date of birth, phone number and address" and was able to calculate "3 x 4" but not "7 x 8"], 1645 [finding Plaintiff can spell "moderate" and "orange" correctly and has ability to perform both simple and repetitive tasks as well as detailed and complex tasks unimpaired]). Additionally, the ALJ referenced Plaintiff's treatment records from Adventist Behavioral Health from April 2020 and September 2022 which indicated normal mental status examination findings. *Id.* (citing Ex. 20F); *see*, *e.g.*, (AR 2402 [September 27, 2022, mental status examination showing logical thought process and progression, higher cognitive function in the normal range for reasoning and logic and is age appropriate, and no decline in mental functioning as to attention, concentration, and memory], 2406 [April 5, 2022, mental status examination showing the same], 2413 [October 19, 2021, mental status examination showing the same], 2416 [April 6, 2021, mental status examination showing the same], 2419 [July 27, 2021, mental status examination showing the same]).

The ALJ found Plaintiff has only a mild limitation in interacting with others by referencing a January 2022 function report acknowledging that while Plaintiff generally did not socialize and stayed home unless she had a medical appointment, she had no difficulty getting along with others. (AR 22) (citing Ex. 4E); *see* (AR 386 [January 28, 2022, Function Report indicating Plaintiff avoids

socializing due to depression and that she has no problems getting along with family, friends, neighbors, or others]). The ALJ also referenced Dr. Chronister's finding as to Plaintiff's attitude/behavior that she appeared "somewhat agitated, "fidgety, [and] tearful" but that she appeared "to be exaggerating symptoms" and that Dr. Chronister acknowledged ability to interact with coworkers and the public is mildly impaired. *See* (AR 1644-45).

The ALJ found Plaintiff had only a mild limitation in concentrating, persisting, or maintaining pace. (AR 22). The ALJ acknowledged Plaintiff alleged in the January 2022 Function Report that she had difficulty concentrating, completing tasks, and following instructions because of memory and concentration problems. *Id.* (citing AR 387 [Function Report showing Plaintiff alleged she has difficulty following written instructions because of memory and concentration problems and that it "depends" regarding spoken instructions]). However, the ALJ noted that Dr. Chronister's examination finding showed Plaintiff had good concentration, did not need any redirection, and was able to perform both simple/repetitive and complex/detailed tasks without impairment and could perform work activities on a consistent basis without special or additional supervision or instruction without impairment. *Id.* (citing AR 1644, 1645).

Lastly, the ALJ found Plaintiff had only a mild limitation in adapting or managing oneself, referencing the same Function Report in acknowledging that although Plaintiff alleged she had some difficulty performing personal self-care functions such as "very simple meal preparation," she was able to drive a car, do a limited amount of shopping, and was able to handle her own funds. *Id.* (citing AR 383-385). The ALJ further referenced Dr. Chronister's finding that Plaintiff's daily activities included caring for her dog, while noting that Dr. Chronister assessed that Plaintiff is not capable of managing her own funds due to cannabis abuse. *See* (AR 1644 [activities of daily living include eating, cleaning, caring for dog, leaving house for twice a week, and noting daily marijuana use], 1645).

Plaintiff argues the ALJ failed to consider whether the combination of several of Plaintiff's impairments produce a severe impairment and impact her ability to function. (Doc. 11 at 12). The undersigned finds that because the ALJ adequately found Plaintiff had only a mild limitation as to each functioning area under the paragraph B criteria based on the record evidence, including

evidence regarding Plaintiff's depression and anxiety, it was reasonable for the ALJ to conclude that Plaintiff's mental impairments, considered alone and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore non-severe. *Keyser*, 648 F.3d at 725-26; *see Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)` ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

Because the ALJ considered Plaintiff's mental health examination records, provided a sufficient explanation for each functioning area he found under the paragraph B criteria to support his finding that Plaintiff's mental impairments of depression and anxiety were non-severe, and properly considered the relevant medical record, including the consultative examination of Dr. Chronister and Plaintiff's Function Report, the ALJ permissibly found Plaintiff's mental impairments are non-severe. *See Woods*, 32 F.4th at 794.

**B. Whether the ALJ Improperly Found Plaintiff's Fibromyalgia was Not a Medically Determinable Impairment**

1. <u>Parties' Contentions</u>

Plaintiff argues the ALJ improperly declined to find that her fibromyalgia was an MDI and cited no record evidence in support of this conclusion, relying instead on a statement that there is no evidence that other disorders were excluded as causing the symptomology Plaintiff assigns to fibromyalgia. (Doc. 11 at 13). In opposition, Defendant contends the ALJ properly found fibromyalgia was not a MDI because the record did not contain medical evidence that other disorders that could cause Plaintiff's symptoms were excluded before diagnosing fibromyalgia as required under SSR 12-2p. (Doc. 15 at 6-7).

In reply, Plaintiff argues that Defendant does not dispute that Plaintiff meets the other criteria to find her fibromyalgia was a severe MDI. (Doc. 16 at 8). Plaintiff argues the ALJ has a duty to develop the record because the ALJ provides no rationale for concluding Plaintiff's treatment provider did not eliminate other causes, as "[i]t is equally probable that the treatment provider acknowledged the existence of other conditions and then diagnosed fibromyalgia." *Id.*

///

2. <u>Governing Authority</u>

Plaintiff has the burden of producing evidence to demonstrate that she was disabled within the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). In assessing disability, the agency "will consider all of [the plaintiff's] medically determinable impairments of which we are aware, including [the plaintiff's] medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). A medically determinable impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings," and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96-4p, 1996 WL 374187, at *1).

In *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), the Ninth Circuit outlined "what fibromyalgia is, how it is properly diagnosed, and what its symptoms are." 874 F.3d at 656. The Ninth Circuit explained:

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.

*Id*. (quotations, citations, and alterations omitted). Under SSR 12-2p, fibromyalgia is "a valid basis for a finding of disability" and requires consideration of a "longitudinal record" in assessing the RFC because fibromyalgia waxes and wanes and a claimant may have good and bad days. *Id*. at 657. Thus, "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods" and "[t]he failure to do so is error." *Id*. at 662.

SSR 12-2p sets forth two criteria for diagnosing fibromyalgia. Pursuant to the first set of criteria based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia, the agency may find that a person has an MDI of fibromyalgia if

she (1) has "a history of widespread pain ... that has persisted (or that persisted) for at least 3 months," although "[t]he pain may fluctuate in intensity and may not always be present"; (2) has "[a]t least 11 positive tender points on physical examination"; and (3) there is "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p at *2-3. Pursuant to the second set of criteria, which is based on the 2010 ACR Preliminary Diagnostic Criteria, the agency may find that a person has fibromyalgia if she (1) has "a history of widespread pain ... that has persisted (or that persisted) for at least 3 months," although "[t]he pain may fluctuate in intensity and may not always be present"; (2) "[r]epeated manifestation of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

"[A] physician may diagnose fibromyalgia if the patient meets the 1990 or 2010 criteria established by the American College of Rheumatology (ACR)." *Ford v. Saul*, 950 F.3d 1141, 1155 n.7 (9th Cir. 2020) (citing SSR 12-2p). Where the record has evidence of a diagnosis of fibromyalgia, the ALJ must consider whether it is a medically determinable impairment under the 1990 and 2010 criteria to determine whether the plaintiff satisfies either of them. *Rounds v. Commissioner of Social Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015).

3. <u>Analysis</u>

In his decision, the ALJ found that Plaintiff's alleged fibromyalgia is not a MDI, noting only that Plaintiff has severe MDIs of degenerative disc disease of the lumbar spine, seropositive rheumatoid arthritis, and Sjogren's syndrome, and that SSR 12-2p requires evidence that other disorders that could cause fibromyalgia-related symptoms or signs were excluded. (AR 23) (citing Ex. 4F).

Here, in support of her argument that the ALJ improperly declined to find her fibromyalgia to be an MDI, Plaintiff relies exclusively on diagnoses by her physicians without reference to any record evidence of symptoms or signs supporting those diagnoses. *See, e.g.* (Doc. 11 at 13) (arguing the ALJ's finding "disregards the treatment providers' ability to make an informed diagnosis over

a period of several years. The records are replete with the consistent diagnosis over a period of years."); accord *id.* at 16, 20; (Doc. 16 at 2) (citing AR 117, 142, 167, 195, 354, identifying fibromyalgia as a condition/diagnosis).[3] It is Plaintiff's burden to identify objective medical evidence in support of the diagnosis under SSR 12-2p. *Johnson*, 60 F.3d at 1432; *Walters v. Kijakazi*, No. 20-35861, 2022 WL 1046208, at *1 (9th Cir. Apr. 7, 2022) ("[S]ubstantial evidence supports the ALJ's finding that Walters's fibromyalgia fails to satisfy the requirements set out in [SSR] 12-2p. … The ALJ correctly explained that no findings in the record met the criteria for a medically determinable fibromyalgia impairment because Walters did not provide objective medical evidence of his symptoms or their severity, and a 'physician's diagnosis alone' cannot establish a medically determinable impairment for social security purposes."); *Thompson v. Comm'r of Soc. Sec.*, No. 2:24-CV-0793-DMC, 2025 WL 871022, at *4 (E.D. Cal. Mar. 20, 2025) ("Plaintiff does not point to such objective evidence in her brief. … [T]he Court finds that SSR 12-2p has not [been] met and that the ALJ did not err at Step 2 in determining that the evidence fails to establish fibromyalgia as a medically determinable impairment in this case."); *see also Ford*, 950 F.3d at 1155 at n.7 ("[B]ecause both the 1990 and 2010 criteria require a physician to rule out other possible causes of a [plaintiff's] pain, SSR 12-2P(II)(A)(3), (B)(3), the ALJ's determination that Dr. Medani failed to do so establishes that Dr. Medani's fibromyalgia diagnosis does not meet either criterion.").

Although the undersigned acknowledges Plaintiff's citation to medical records showing she was diagnosed with fibromyalgia, the records do not demonstrate that Plaintiff's other conditions that could cause Plaintiff's symptoms were excluded in making that diagnosis. *See, e.g.* (AR 934 [May 19, 2021, medical examination record diagnosing fibromyalgia without consideration of whether co-conditions were excluded], 936-39 [April 8, 2021, record finding the same], 942 [March 8, 2021, record finding the same], 1298 [August 24, 2021, record noting history of fibromyalgia but no consideration if how that diagnosis was made]).

Therefore, the undersigned finds that the ALJ did not err in determining that the evidence

---

[3] Plaintiff also references AR 319 and AR 330, but neither of those pages of the CAR mentions fibromyalgia.

fails to establish fibromyalgia as an MDI.

**C. Whether the ALJ Failed to Properly Evaluate the Medical Opinion Evidence of Record**

1. Parties' Contentions

Plaintiff argues the ALJ erred in his assessment of the opinions of the medical treatment providers and state agency consultants by "selecting only records or parts of records to support the unfavorable decision." (Doc. 11 at 14). Plaintiff contends the ALJ erred in finding persuasive the opinion of consultative examiner Dr. Chronister that Plaintiff was malingering, arguing that the ALJ acted contrary to the SSR and "accepted medical practice." *Id.* at 14-15. Plaintiff further argues that that ALJ improperly found that the state agency medical opinions of Dr. S. Khan and Dr. Bert Spetzler were persuasive when, in fact, they disregarded Plaintiff's treatment records such that the "factors of supportability and consistency are not properly considered in the decision denying benefits." *Id.* at 15-21. Plaintiff relatedly argues that the ALJ failed to consider the medical sources' treatment relationship with Plaintiff in finding the opinions persuasive. (Doc. 16 at 5-6).

Defendant contends that the ALJ reasonably assessed the persuasiveness of the medical opinions and prior administrative medical findings based on their supportability and consistency with the record. (Doc. 15 at 8). With respect to finding Dr. Chronister's opinion persuasive, Defendant argues the ALJ relied on substantial evidence in concluding the opinion was well-supported by her own mental status examination findings and the objective medical evidence, and separately, was consistent with the other evidence of record "which likewise did not indicate significant mental functional limitation." *Id.* at 8-10. Defendant also asserts the ALJ properly considered the supportability and consistency of Dr. Khan and Dr. Spetzler's opinions in finding those opinions persuasive. *Id.* at 11.

2. Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the [plaintiff]; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors],"

except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [she] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

3. Dr. Chronister's Opinion

On April 26, 2022, Dr. Chronister conducted a consultative mental evaluation of Plaintiff. (AR 1643). Dr. Chronister found Plaintiff to be an adequate historian, was currently prescribed Seroquel, sees a psychiatrist every three months, and saw a therapist a year ago. *Id.* Dr. Chronister noted Plaintiff's family, social, and employment history, substance use history, and daily activities including eating, cleaning, caring for her dog, and leaving the house twice a week. (AR 1644). In the mental status examination, she found Plaintiff: had good concentration; "somewhat agitated" and "fidgety, tearful" attitude/behavior; linear, organized, normal rate of speech articulated clearly; passive suicidal thoughts occasionally had no intent during the interview; was oriented; had normal recall, fund of knowledge, calculation ability, concentration, and abstract thinking; with good prognosis. (AR 1644-45). Dr. Chronister opined Plaintiff's functional assessment as: not capable of managing her own funds due to cannabis abuse; unimpaired ability to perform simple, repetitive, detailed, and complex tasks; mild impairment to ability to accept instructions from supervisors due to being very calculated with answers, inconsistent answers, and recalled 1/3 objects in five minutes; mild impairment to ability to interact with coworkers and the public; unimpaired ability to perform work activities on a consistent basis without special or additional instructions; mild impairment to ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition due to mild anxiety, mild mood instability, likely cannabis abuse, and likely malingering; and mild impairment to ability to deal with the usual stress encountered in a workplace. (AR 1645-46).

4. Dr. Khan and Dr. Spetzler's Opinions

On May 31, 2022, Dr. Khan conducted a psychiatric review technique evaluation of

Plaintiff. (AR 127). Dr. Khan identified Plaintiff had non-severe anxiety, obsessive-compulsive-disorders, and depressive, bipolar, and related disorders, noting these MDIs do not precisely satisfy the diagnostic criteria considered therein. (AR 127-28). Dr. Khan assessed Plaintiff had mild limitations to the four areas of paragraph B criteria and found Plaintiff was "psychiatrically stable." (AR 128). Dr. Khan assessed Plaintiff's statements regarding symptoms considering the record evidence as "partially consistent" and that Plaintiff had a light RFC based on the consistency of his symptom-related limitations. (AR 130). Dr. Khan acknowledged that he considered the supportability and consistency of an April 26, 2022, medical opinion finding that Plaintiff had mild to no limitations and "reports not capable of handling funds." *Id.* Dr. Khan assessed exertional, postural, manipulative, and environmental limitations. *See* (AR 131-33). Dr. Khan explained the RFC that the "[o]verall evidence supports a functional level of a light RFC with gross/fine manipulation limited to frequent for both current and T2 claim with DLI in the past. Pain has been considered in this RFC." (AR 134, 137).

On March 20, 2023, Dr. Spetzler assessed the same findings as to Plaintiff's light RFC. *See* (AR 182-86).

5. <u>Analysis</u>

*a. Analysis – Dr. Chronister*

The ALJ noted that Plaintiff underwent a consultative psychological evaluation in April 2022 with Dr. Chronister. (AR 27). The ALJ found persuasive Dr. Chronister's opinion that Plaintiff had no more than mild limitations in her ability to perform various mental work-related functions but with no limitations in her ability to perform simple, repetitive, detailed, and complex tasks. *Id.* The ALJ noted Dr. Chronister's evaluation findings that Plaintiff "appeared to be exaggerating her symptoms and found evidence of likely malingering" and diagnoses, including a stimulant use disorder in full remission, cannabis abuse, adjustment disorder with anxious mood, unspecified mood disorder, insomnia, and malingering. *Id.* (citing Ex. 12F). The ALJ found the opinion is "well-supported" by Dr. Chronister's own mental status examination findings and is consistent with the record medical evidence "as a whole" showing normal findings despite Plaintiff's apparent ongoing drug and alcohol abuse. *Id.* (citing Exs. 1F, 2F, 3F, 7F).

Here, the ALJ appropriately considered the supportability and consistency of Dr. Chronister's opinion in finding the opinion persuasive. As to supportability, Dr. Chronister assessed that Plaintiff had no more than mild mental limitations based on her mental status examination findings showing mostly normal results, including as to memory, fund of knowledge, concentration, judgment, and unimpaired ability to perform both simple/repetitive and detailed/complex tasks, notwithstanding certain mild impairments and limitations, including to managing her own funds, accepting instructions from supervisors, interacting with others, and maintaining regular attendance during a normal workday/work week. *See* (AR 1645-66). The ALJ found the opinion supported by explaining these findings, noting that she had "no restriction" in reviewing Plaintiff's records and past psychiatric history. (AR 1643). The ALJ noted Dr. Chronister's observation that, although Plaintiff presented with "poor eye contact" and was somewhat agitated, she appeared to exaggerate her symptoms and gave inconsistent answers. As a result, Dr. Chronister found Plaintiff's ability to accept instructions from supervisors is mildly impaired "due to being very calculated with answers" and her "inconsistent answers." *Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence."). As such, the ALJ permissibly found the opinion was supported by the medical record and, thus, persuasive, given the ALJ adequately explained her reasoning with reference to the objective medical evidence from her mental status examinations of Plaintiff. *Id.*

Additionally, the ALJ properly considered the consistency of Dr. Chronister's opinion with reference to the record evidence showing mostly normal findings. *See* (AR 489 [March 24, 2019, nursing documentation flowsheet demonstrating alert consciousness, oriented and "age appropriate," calm/cooperative affect and behavior], 493 [same], 555 [March 16, 2019, examination indicating cooperative, appropriate mood and affect, alert and oriented, no neurological deficit observed], 642 [May 14, 2019, treatment record demonstrating the same], 888 [May 28, 2019, treatment record indicating the same]).

*b. Analysis – Dr. Khan and Dr. Spetzler*

Next, the ALJ found persuasive the opinions of state agency medical consultants Dr. Khan

and Dr. Spetzler that Plaintiff could perform light exertion involving no more than frequent pushing/pulling with the left lower extremity, any climbing ladders, ropes, or scaffolds, more than occasional postural activities with no limitations in balancing, no more than frequent handling and fingering with the bilateral upper extremities, and no concentrated exposure to extreme cold or hazards. (AR 26). The ALJ reasoned that these opinions are persuasive because they are "well-supported" with analysis and are consistent with the record medical evidence showing normal physical examination findings. *Id.* (citing Exs. 3A, 4A, 5A, 6A, 1F, 4F, 7F, 10F, 13F, 14F, 16F, 17F). The ALJ also permissibly reasoned that there is no opinion from any treating source indicating a more restrictive RFC or regarding Plaintiff's physical RFC. *Id.* The ALJ acknowledged Dr. Khan found that Plaintiff had depressive and anxiety disorders but "with no more than mild limitations in all four areas" of the paragraph B criteria of mental functioning. (AR 27) (citing Exs. 3A, 4A).

Here, the ALJ properly evaluated the supportability and consistency of Dr. Khan and Dr. Spetzler's opinions with substantial evidence. First, concerning supportability, the ALJ acknowledged that Dr. Khan and Dr. Spetzler characterized Plaintiff's physical symptoms as mild, that they did not affect Plaintiff's functionality, and that Plaintiff had no more than mild limitations in any of the four areas of mental functioning. (AR 26); *see* (AR 123-24 [findings of fact and analysis of evidence of records from June 2021 to November 2021 showing objectively normal physical functionality], 183-86 [March 20, 2023, physical RFC assessment of Dr. Spetzler corroborating assessment of light RFC with certain physical limitations]). Second, concerning consistency, the ALJ determined that the opinions aligned with the overall record reflecting unremarkable mental status examination findings. (AR 26-27); *see, e.g.* (AR 493 [March 24, 2019, treatment record indicating unremarkable mental findings]). Based on the medical source opinions and the objective medical evidence cited, the ALJ's finding that Dr. Khan and Dr. Spetzler's opinion was consistent with the record "as a whole" is legally sufficient and supported by substantial evidence. *See, e.g., Sutton v. Kijakazi*, No. 1:21-cv-01097-SKO, 2022 WL 4110304, at *9 (E.D. Cal. Sept. 7, 2022) (upholding ALJ's finding that medical source opinion was inconsistent with the longitudinal record as a whole was supported by substantial evidence).

Plaintiff's reference to various treatment records and associated argument that the ALJ did not properly consider the supportability and consistency of Dr. Khan and Dr. Spetzler's opinions reflects, at most, her identification of an additional, rational interpretation of the evidence different from the ALJ's finding. "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198; *Bryan T. v. Dudek*, 799 F. Supp. 3d 943, 956 (N.D. Cal. 2025) ("[T]he possibility of reasonably reaching a different conclusion about persuasiveness does not make an ALJ's determination unsupported by substantial evidence and is not sufficient grounds for reversal. … As long as the 'ALJ's rationale is clear enough that it has the power to convince,' it is not the 'role [of this Court] to second-guess it[.]'") (citations omitted).

Plaintiff's argument that the ALJ erred in assessing the medical opinion evidence by failing to consider the opining providers' treating relationship with Plaintiff is unpersuasive. While under the revised regulations operative here, the treating relationship between the medical provider and the patient is a relevant consideration, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Under the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence.'"); *e.g., Melynda G v. Kijakazi*, No. 5:20-cv-00890-JC, 2022 WL 911585, at *4 n.7 (C.D. Cal. Mar. 29, 2022) ("For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply. 20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term 'treating source,' and eliminated deference to treating source medical opinions.") (citations omitted).

**D. Whether the ALJ Erred in Assessing Plaintiff's RFC**

1. Parties' Contentions

Plaintiff argues the ALJ erred by failing to assess the RFC based on all the relevant evidence of record (*see* Doc. 11 at 21-22) and on a function-by-function basis (*see* Doc. 16 at 9). Plaintiff contends that the ALJ's hypothetical to the vocational expert improperly failed to include limitations responsive to Plaintiff's testimony that she experiences a pain level of "five or six" and

was unable to perform most activities of daily living due to limitations with sitting or standing longer than 30 minutes and with her ability to lift and carry due to swelling in her hands from arthritis. *Id.* at 23-24. Plaintiff asserts the ALJ erred when he ignored objective medical evidence regarding her numerous physical impairments in finding "there was no opinion" from Plaintiff's treating source regarding her physical RFC. *Id.* at 24-25. Further, Plaintiff contends that the ALJ failed to provide a sufficient basis to minimize the severity of her physical impairments in relying on a June 2021 report of pain management specialist Ashok M. Parmar, M.D., which provided that Plaintiff is "moderately able to carry out activity of daily living." *Id.* at 25.

Defendant contends the ALJ properly found Plaintiff capable of light work with certain restrictions where the RFC was supported by objective medical evidence and the prior administrative medical findings of Dr. Khan and Dr. Spetzler. (Doc. 15 at 12). Defendant argues the ALJ permissibly considered the medical opinions of record in assessing the RFC, highlighting that "none of the opinions or prior administrative medical findings found Plaintiff more limited than the ALJ found" in the RFC. *Id.*

2. <u>Governing Authority</u>

A plaintiff's RFC is "the most [the plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *id.* § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In general, an ALJ must consider the limiting effect of all impairments, including those that are non-severe, in assessing a plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(2); *id.* § 416.945(a)(2). However, the ALJ is not required to include limitations in the RFC if the record supports a conclusion that the non-severe impairments do not cause a significant limitation in the plaintiff's ability to work. *See Koshak v. Berryhill*, No. CV 17-6717-AFM, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018) (finding that the ALJ was not required to include insignificant mental impairment in Plaintiff's RFC since he provided reasons supported by substantial evidence to justify non-inclusion). If the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the

ALJ has not committed legal error." *Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); *see K.B. v. Comm'r of Soc. Sec.*, No. 24-cv-06218-VKD, 2025 WL 2780787, at *6 (N.D. Cal. Sept. 30, 2025) (finding the ALJ did not err because the ALJ specifically considered plaintiff's asthma in determining the RFC and concluded that it presented no more than mild functional limitations without any significant limitation on her ability to do basic work activities).

3. Analysis

As discussed above, the ALJ properly found that Plaintiff's alleged fibromyalgia is not a MDI such that it is neither a non-severe or severe impairment. Because fibromyalgia is not an impairment here, the ALJ is not required to assess the limiting effects thereto in the RFC determination. Further, the ALJ permissibly found that Plaintiff's mental impairments of depression and anxiety were non-severe impairments based on his consideration of the record and of the paragraph B criteria.

The ALJ found that Plaintiff's spinal impairment, joint condition, arthritis, and Sjogren's syndrome did not satisfy the relevant criteria under the C.F.R. and SSR such that these impairments, singly or in combination, did not meet or medical equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23-24). The ALJ addressed in his written opinion records regarding these impairments in relation to the RFC. (AR 25-27).

The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [A]ny work involving more than frequent pushing/pulling of the bilateral lower extremities; any climbing ladders, ropes, or scaffolds; more than occasional of the remaining postural activities (with no limits in balancing); more than frequent handling and fingering with the bilateral upper extremities; and any concentrated exposure to extreme cold or hazards.

(AR 24). First, the ALJ considered Plaintiff's hearing testimony, including that she experiences pain levels at a "5-6" after taking medications, that she sees a doctor once a month for her arthritis, and has difficulty engaging in activities of daily living due to pain. (AR 25). Next, the ALJ considered Plaintiff's medical evidence involving her impairments. *Id.* (citing Exs. 4F, 21F). The

ALJ provided detailed consideration of the alleged symptoms from Plaintiff's impairments, noting Plaintiff's positive responses to medication without "experiencing any signs or symptoms of medication side effects[,]" Dr. Parmar's finding that Plaintiff "was able to moderately carry out her activities of daily living and carry out daily routine physical activities with a moderate functional improvement[,]" and normal general and neurological examination findings. (AR 26) (citing Exs. 6F, 21F). The ALJ noted that "[t]here is no opinion in the record from any of [Plaintiff's] treating sources regarding her physical [RFC]" before finding persuasive the opinions of state agency medical consultants Dr. A. Khan and Dr. Bert Spetzler—finding that Plaintiff could perform light exertion involving no more than frequent pushing/pulling with the left lower extremity; any climbing ladders, ropes, or scaffolds; more than occasional postural activities (with the exception of no limitations in balancing); no more than frequent handling and fingering with the bilateral upper extremities; and no concentrated exposure to extreme cold or hazards—"because they are well-supported" by the record and consistent with the medical record as a whole. *Id.* The ALJ expressly found that "there is no opinion from any treating source indicating a more restrictive physical [RFC]" in the record. *Id.* The ALJ then considered record evidence and medical opinion evidence to Plaintiff's mental conditions, finding that "there is no evidence of a severe mental impairment in this case." (AR 27).

Here, the ALJ properly assessed Plaintiff's RFC in considering physical limitations consistent with the record evidence and sufficiently considered the limitations of Plaintiff's impairments in making that determination. The RFC adequately included restrictions responsive to and consistent with the ALJ's consideration of the evidence, including the medical opinion testimony he found persuasive, such that Plaintiff's argument the ALJ ignored objective medical evidence of her alleged limitations is unavailing. For example, the ALJ acknowledged Dr. Parmar's findings that Plaintiff had "numerous abnormalities on physical examination" at an initial evaluation in November 2020, but also his findings in January 2021 and June 2021 that Plaintiff was able to moderately carry out her daily activities, had positive improvement with medication, and had normal examination findings, and had normal general and neurological examination findings in February 2024. (AR 26). Because the ALJ properly found Dr. Parmar's opinion was

persuasive, and Plaintiff does not argue otherwise, Plaintiff fails to show any error by the ALJ in assessing the RFC. *See, e.g.*, *Jenkins v. O'Malley*, No. 1:22-cv-00309-BAM, 2024 WL 3890105, at *7 (E.D. Cal. Aug. 21, 2024) ("Specifically, the ALJ considered medical evidence demonstrating that her asthma appeared to be stable. In so doing, the ALJ … concluded it was non-severe. Despite finding the condition non-severe, the ALJ determined that a limitation to only occasional exposure to fumes, dusts, gases, and poor ventilation accommodated her non-severe condition. The ALJ therefore considered limitations imposed by Plaintiff's asthma in developing the RFC.").

**E. Whether the ALJ's Finding that Plaintiff Could Work in a Competitive Work Environment Was Erroneous**

1. <u>Parties' Contentions</u>

Plaintiff contends the hypothetical questions the ALJ posed to the vocational expert ("VE") were incomplete and do not support the finding that Plaintiff has the RFC to perform in a competitive work environment. (Doc. 11 at 26). Specifically, Plaintiff argues that neither her pain, documented physical limitations due to swelling in her lower extremities and standing/sitting limitations, nor her mental limitations are addressed in the RFC hypotheticals to the VE. *Id.* Plaintiff contends that each hypothetical failed to include objective evidence from treatment providers and the ALJ's decision failed to address concentration or mental limitations or attendance requirements. *Id.* at 26-27. Plaintiff further argues that the hypotheticals posed to the VE failed to address what, if any, erosion would occur to the job numbers if consideration was given to Plaintiff's impairments, and that the VE failed to properly address the basis for determining which of the job numbers reflect part-time versus full-time employment. *Id.* at 27. Plaintiff reiterates her argument that the RFC's failure to incorporate Plaintiff's limitations on a function-by-function basis resulted in a flawed, unsupported hypothetical question to the VE such that the ALJ's step four and step five findings were not supported by substantial evidence. (Doc. 16 at 9). Plaintiff argues the ALJ's finding failed to consider repeated references to pain, the objective evidence of depression, and the objectively documented results of MRIs. *Id.*

Defendant argues the ALJ properly found Plaintiff was not disabled at step five based on the testimony of the VE. (Doc. 15 at 12-13). Defendant asserts that Plaintiff's argument—that

Plaintiff could perform competitive work based on an incomplete hypothetical—relies on her previous unsuccessful arguments that the ALJ's assessment of the RFC was insufficient and does not present an independent basis for review. *Id.* at 13.

2. Governing Authority

"At the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the [plaintiff] is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill*, 698 F.3d at 1161 (citing 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r. of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010)). "The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the [plaintiff's] limitations, both physical and mental, supported by the record." *Id.* "If a vocational expert's hypothetical does not reflect all the [plaintiff's] limitations, then the expert's testimony has no evidentiary value to support a finding that the [plaintiff] can perform jobs in the national economy." *Id.* (citing *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

3. Analysis

At the hearing, the ALJ posed a hypothetical to the vocational expert, Gregory Jones, to assume whether an individual of the same age, education, and past work experience as Plaintiff who would have limitations—including work at the light exertional level with frequent pushing or pulling of the bilateral lower extremities, occasional postural activities except no climbing ladders, ropes, or scaffolds, and there are no limits balancing, frequent handling and fingering with the bilateral upper extremities, and avoid concentrated exposure to extreme cold and hazards—would be able to perform Plaintiff's past work as generally performed, and whether there would be any other work available in the national economy that this hypothetical individual could perform. (AR 71-72). The VE opined that Plaintiff would be able to undertake her past work as an informal waitress as generally performed. (AR 72). The VE further opined that there is other work available in the national economy that Plaintiff could perform, including in the fields of general cashier, housekeeping cleaner, and cafeteria attendant. (AR 72-73). The ALJ noted that although the VE's testimony is inconsistent with the information contained in the DOT, he explained that "there is a

reasonable explanation for the discrepancy" as there is "less pushing and pulling and not specifying [the] type of climbing[.]" (AR 29).

As discussed above, the ALJ properly considered Plaintiff's impairments, severe and non-severe, and the limitations thereto in determining the RFC. Therefore, Plaintiff fails to show that the ALJ erred in his questioning and hypotheticals proposed to the VE based on argument that the assessed RFC was incomplete. Accordingly, Plaintiff fails to demonstrate the ALJ erred in finding Plaintiff could work in a competitive work environment in relying on the VE's testimony. *Hill*, 698 F.3d at 1161.

## V. <u>CONCLUSION, ORDER, AND RECOMMENDATION</u>

Accordingly, IT IS HEREBY ORDERED that:

1. The September 29, 2026, findings and recommendations to grant in part Plaintiff's motion for summary judgment (Doc. 18) are VACATED.

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 11) be DENIED;
2. The ALJ's decision (Doc. 10) be AFFIRMED; and
3. The Clerk of the Court be DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Misty D. Shockey and to then close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within 14 days** after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

*Remainder of This Page Intentionally Left Blank*

A party's failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 16, 2026**

UNITED STATES MAGISTRATE JUDGE